IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                         PLAINTIFF/RESPONDENT

V.                         Criminal No.  2:11-cr-20021-PKH-MEF-1

THOMAS LINDLEY                                   DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendant/Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody filed on February 16, 2016.  (Doc. 31)

The United States filed a response (Doc. 34) on March 18, 2016.  Following a stay pending the

decision in *Mathis*[1], the Defendant/Petitioner filed a memorandum in support of his § 2255 motion

(Doc. 43) on September 14, 2016.  The United States filed its supplemental response (Doc. 44) on

October 7, 2016.  Defendant/Petitioner filed a reply (Doc. 47) on December 7, 2016.  The matter is

ready for report and recommendation.

### I.  Background

On April 6, 2011, Defendant/Petitioner, Thomas Lindley ("Lindley"), was named in an

Indictment charging him, having previously been convicted of a crime punishable by imprisonment

exceeding one year, with knowingly possessing a firearm, which had been shipped and transported

in interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Doc. 1)  Lindley was

arrested on April 25, 2011, and he appeared for arraignment before the Hon. James R. Marschewski,

Chief United States Magistrate Judge, on May 5, 2011, at which time Lindley entered a not guilty

plea to the Indictment.  (Doc. 5)  John B. Schisler ("Schisler"), Assistant Federal Public Defender,

---

[1] *Mathis v. United States*, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016).

was appointed to represent Lindley.  (Doc. 7)

On June 21, 2013, Lindley appeared before the Hon. P. K. Holmes, III, Chief United States District Judge, for a change of plea hearing.  (Doc. 13)  Pursuant to a written Plea Agreement (Doc. 14), Lindley pleaded guilty to the Indictment charging him with knowingly possessing a firearm, which had been shipped and transported in interstate commerce, after having been previously convicted of a crime punishable by imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Doc. 13; Doc. 14, ¶ 1)  The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report.  (Doc. 13)

An initial Presentence Investigation Report ("PSR") was prepared on September 19, 2011.  (Doc. 17)  In it, Lindley's criminal conduct resulted in a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2).  (Doc. 18, ¶ 10)  Since Lindley was subject to an enhanced penalty pursuant to 18 U.S.C. § 924(e), he was considered an armed career criminal within the meaning of U.S.S.G. § 4B1.4, which elevated his offense level to 33.  (Doc. 17, ¶ 16)  After a reduction of three levels for acceptance of responsibility (Doc. 17, ¶ 17), Lindley's total offense level was determined to be 30 (Doc. 17, ¶ 18).

Lindley was found to have 24 criminal history points, placing him in criminal history category VI.  (Doc. 17, ¶ 49)  Because Lindley was determined to be an armed career criminal, the statutory minimum term of imprisonment was 15 years, and the statutory maximum term of imprisonment was life.  (Doc. 17, ¶ 63)  Based on a total offense level of 30 and a criminal history category of VI, the advisory guideline range for imprisonment was 168 to 210 months; but, because Lindley faced a mandatory minimum sentence of 15 years as an armed career criminal, the guideline range for imprisonment was 180 to 210 months.  (Doc. 17, ¶ 64)  Absent the armed career criminal

finding, the statutory maximum for the offense of conviction would have been not more than ten years imprisonment.  (Doc. 2; Doc. 17, ¶ 63)  The United States advised that it had no objections to the PSR.  (Doc. 17, p. 17)  Lindley, through his counsel, made two objections to the PSR, both of which resulted in corrections being made by the Probation Officer.  (*Id*.)  A final PSR was submitted to the Court on November 17, 2011.  (Doc. 17)

Lindley appeared for sentencing on December 8, 2011.  (Doc. 16)  The Court made inquiry that Lindley was satisfied with his counsel; the PSR was reviewed in open court; counsel and Lindley were afforded the opportunity to make statements; and, the Court imposed a low-end guidelines sentence of 180 months imprisonment, five years supervised release, a $3,000.00 fine, and a $100.00 special assessment.  (Doc. 16)  Judgment was entered by the Court on December 8, 2011.  (Doc. 18)

Lindley filed a Notice of Appeal from the Judgment on December 20, 2011.  (Doc. 20)  On appeal, his counsel filed a brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and he argued (1) that Lindley's prior convictions were not "violent felonies" because his family members were the victims in at least two of his four burglary convictions and his robbery conviction did not involve a weapon, and (2) that this Court treated the sentencing guidelines as mandatory.  *United States v. Lindley*, 481 Fed.Appx. 294 (8th Cir. 2012).  These arguments failed, and the Eighth Circuit affirmed this Court's judgment.  *Id.*

On February 16, 2016, Lindley filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (Doc. 31)  Lindley's motion cites the United States Supreme Court's decision in *Johnson v. United States*, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), and he argues that his "prior convictions that were counted under the residual

-3-

clause must be disregarded, and Petitioner must be resentenced to a non-ACCA sentence if he no longer has three prior qualifying convictions for crimes of violence." (Doc. 31, p. 4)

The United States' response to the motion was filed on March 18, 2016. (Doc. 34) In it, the United States argued that burglary is one of the offenses specifically enumerated as a "violent felony" in 18 U.S.C. § 924(e)(2)(B)(ii); that *Johnson* did not call into question application of the enumerated offenses or the remainder of the ACCA's definition of a "violent felony"; that the Eighth Circuit found Lindley's prior convictions to be "violent felonies" in his direct appeal; and, that by using the modified categorical approach, and relying on *United States v. Mathis*, 786 F.3d 1068 (8th Cir. 2015), Lindley's prior burglary convictions are "violent felonies" under the ACCA. The United States asserted, "[t]he Eighth Circuit[']s decision in *Mathis* is decisive here." (Doc. 34, p. 10)

On April 8, 2016, Lindley filed a Motion to Stay Proceedings (Doc. 35) in which he referred to the Government's *Mathis* argument and noted that the United States Supreme Court had granted certiorari in *Mathis v. United States*, 136 S.Ct. 894 (Jan. 19, 2016). An Order (Doc. 36) was entered on May 2, 2016 granting the stay pending the Supreme Court's decision in *Mathis*.

*Mathis v. United States*, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016) was decided on June 23, 2016. This Court then entered an Order (Doc. 39) on August 8, 2016 terminating the stay and requesting additional briefing. Lindley filed his Memorandum in Support of Motion Under 28 U.S.C. § 2255 (Doc. 43) on September 14, 2016. The United States filed its response (Doc. 44) on October 7, 2016. Lindley then filed a reply (Doc. 47) on December 7, 2016.

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that

the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  A thorough review of Lindley's § 2255 motion, the United States' response, and the files and records of this case conclusively show that Lindley is entitled to relief under *Johnson*, and the undersigned recommends that his motion pursuant to § 2255 (Doc. 28) be granted, his sentence be vacated, and that Lindley be re-sentenced without the ACCA enhancement based on his pre-1993 Arkansas burglary convictions.

## A. *Johnson*, *Welch*, and the Residual Clause of the ACCA

The ACCA defines the term "violent felony" as a crime punishable by a term of imprisonment exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added).  The italicized portion of subsection (ii) above is known as the "residual clause" of the ACCA.  *See James v. United States*, 550 U.S. 192, 197, 127 S.Ct.

1586, 167 L.Ed.2d 532 (2007) (question of whether attempted burglary, as defined by Florida law, fell within the ACCA's residual provision for crimes that "otherwise involv[e] conduct that presents a serious potential risk of physical injury to another").

On June 26, 2015, the United States Supreme Court ruled in *Johnson* that the residual clause of the ACCA was unconstitutionally vague. On April 18, 2016, the Supreme Court decided in *Welch v. United States*, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016) that its ruling in *Johnson* announced a new substantive rule that applied retroactively on collateral review. The United States concedes that the *Johnson* rule is retroactive to Lindley's ACCA-enhanced sentence under his motion for relief brought pursuant to 28 U.S.C. § 2255. (Doc. 44, p. 4)

### B. Timeliness

A one year period of limitation applies to motions under 28 U.S.C. § 2255. This period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The operative date in this case is "the date on which the right asserted was initially

recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 225(f)(3).  Here, the new rule announced in *Johnson*, made retroactively applicable to cases on collateral review, was recognized by the Supreme Court on June 26, 2015.  Lindley's § 2255 motion was filed on February 16, 2016, which as the United States concedes, is within the one-year limitations period prescribed in 28 U.S.C. § 2255(f)(3).

## C. Lindley's Pre-1993 Arkansas Burglary Convictions

Lindley contends that by virtue of the Supreme Court's ruling in *Johnson*, his prior Arkansas burglary convictions no longer qualify as valid predicate offenses under the ACCA.  (Doc. 43, pp. 2-11)  As reflected in the PSR, Lindley had three convictions for burglary prior to 1993.  (Doc. 17, ¶¶ 22, 24, 25)  The first of these was in the Circuit Court of Crawford County, Arkansas, case number CR 90-133, on October 3, 1990 (Doc. 43-1); the second, also in the Circuit Court of Crawford County, Arkansas, case number CR 92-41, was on May 11, 1992 (Doc. 43-2); and, the third, in the Circuit Court of Sebastian County, Arkansas, case number CR 92-125, was on May 20, 1992 (Doc. 43-3).

At the time of his convictions, A.C.A. § 5-39-201 provided that "[a] person commits burglary if he enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment."  The term "occupiable structure" was defined as "*a vehicle*, building, or other structure: (A) Where any person lives or carries on a business or other calling; or (B) Where people assemble for purposes of business, government, education, religion, entertainment, or public transportation; or (C) Which is customarily used for overnight accommodation of persons whether or not a person is actually present.  Each unit of an

occupiable structure divided into separately occupied units is itself an occupiable structure." A. C.A. § 5-39-101(1) (pre-1993 version) (emphasis added). These statutes were amended in 1993 to make residential and commercial burglary separate offenses, with separate definitions for a "residential occupiable structure" and a "commercial occupiable structure." 1993 Ark. Acts 552, §§ (1) and (2).

The pre-1993 Arkansas burglary statute does not contain as an element the use, attempted use, or threatened use of physical force against the person of another, and so burglary does not qualify as a violent felony under the force clause of 18 U.S.C. § 924(e)(2)(B)(i). The United States concedes this point. (Doc. 44, p. 7) Thus, in order to be considered a violent felony for ACCA purposes, a burglary conviction must qualify as an enumerated offense under § 924(e)(2)(B)(ii).

"Generic burglary," for purposes of a categorical analysis, is described in *Taylor v. United States*, 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed2d 607 (1990) (emphasis added), as any crime "having the basic elements of unlawful or unprivileged entry into, or remaining in, *a building or structure*, with intent to commit a crime."

Lindley argues that because the pre-1993 Arkansas burglary statute encompassed unlawful entry into a vehicle, it is over-broad, non-generic, and that convictions under the statute do not qualify as predicate offenses under the ACCA. (Doc. 43, p. 6) In light of *Mathis*, the Government agrees that Lindley's pre-1993 Arkansas burglary convictions no longer qualify as "violent felonies" for purposes of enhancement under the ACCA. (Doc. 44, pp. 7-9) Accordingly, the United States concedes that Lindley's sentence should be vacated, and that he should be re-sentenced without the ACCA designation based on his pre-1993 Arkansas burglary convictions.

The United States notes, however, that it is not conceding that any of the remainder of Lindley's prior criminal history may not still qualify him as an armed career criminal offender, and

the United States reserves any additional arguments it may have regarding the PSR or the specific sentencing enhancements that may apply in Lindley's case.

### D.  Lindley's Arkansas Robbery Conviction

Lindley also argues that his robbery conviction is no longer a valid predicate offense under the ACCA.  (Doc. 43, pp. 11-13)  The Government chose not to address this argument in its response, noting instead that without Lindley's prior burglary convictions he would no longer have the necessary three convictions needed to qualify for an enhanced ACCA sentence.  (Doc. 44, p. 4 n. 1)

Lindley was convicted of robbery in the Circuit Court of Sebastian County, Arkansas, case number CR 05-00307, on March 16, 2005.  (Doc. 43-4)  Lindley pleaded guilty to violating A.C. A. § 5-12-102, which provides that "[a] person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person."  Eighth Circuit precedent held "[b]y definition, robbery in Arkansas qualifies as a crime of violence under [U.S.S.G.] § 4B1.2(a)(1)" because of the clause in the statute that required a person "employ[] or threaten[] to immediately employ physical force upon another person."  *See United States v. Sawyer*, 588 F.3d 548, 556 (8th Cir. 2009).  Because the definition of a "crime of violence" under § 4B1.2(a) and that of a "violent felony" under § 924(e)(2)(B) are virtually identical, and have been interpreted as effectively interchangeable, Arkansas robbery was also considered to be a violent felony for ACCA purposes in this circuit.

*Sawyer*, however, was decided prior to *Johnson*, in which the Supreme Court clarified that "physical force" in the context of ACCA's definition of a violent felony "means *violent* force - that

-9-

is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140 (emphasis in original). The Eighth Circuit recently reevaluated its holding in *Sawyer* in light of *Johnson* and held that a conviction for Arkansas robbery does not categorically constitute a violent felony under the ACCA. *United States v. Eason*, 829 F.3d 633, 642 (8th Cir. 2016) ("In sum, we cannot conclude that the degree of physical force required to commit robbery in Arkansas rises to the level of physical force required to establish a crime of violence for ACCA purposes."). In so holding, the Eighth Circuit recognized that the definition of physical force found at A.C.A. § 5-12-101 falls short of requiring "force capable of causing physical pain or injury to another person" as required by *Johnson*. The court noted that Arkansas law made clear that a robbery may be committed "even where there was no threat of force and no actual injury befell the victim." *Eason*, 829 F.3d at 641 (citing *Fairchild v. State*, 269 Ark. 273, 600 S.W.2d 16 (1980)). Because no bodily injury is necessary to support an Arkansas robbery conviction, and because "not every unwanted touching constitutes violent force," *see Eason*, 829 F.3d at 642 n.7, a conviction for Arkansas robbery does not qualify as a violent felony under the ACCA's force clause.

Accordingly, the undersigned must conclude that Lindley's prior Arkansas conviction for robbery cannot be considered as a predicate offense for purposes of sentencing enhancement under the ACCA.

### E.  Enhancements Under U.S.S.G. § 2K2.1

Finally, Lindley contends that none of his prior convictions can be considered "crimes of violence" for purposes of application of an enhanced base offense level under U.S.S.G. § 2K2.1. (Doc. 43, pp. 13-14)  The enhancement included an increased base offense level of 24 because Lindley possessed a firearm "subsequent to sustaining at least two felony convictions of a crime of

-10-

violence." (Doc. 17, ¶ 10)  The United States moves the Court to stay the litigation concerning this argument pending the United States Supreme Court's decision in *Beckles v. United States*, 136 S.Ct. 2510 (2016).  For the reasons discussed below, the undersigned recommends denial of a stay.

For its definition of "crime of violence," Application Note 1 to § 2K2.1 refers to § 4B1.2(a). The definition of "crime of violence" found at § 4B1.2 is virtually identical to the ACCA's definition of a "violent felony" found at 18 U.S.C. § 924(e)(2)(B).  In light of *Johnson*, Lindley contends that the identical residual clause of § 4B1.2 is also unconstitutional.  (Doc. 43, p. 13)  It is the Government's position that *Johnson* does not apply retroactively on collateral review in Guidelines cases.  (Doc. 44, p. 10)  The Government points out that this issue will be directly affected by the Supreme Court's decision in *Beckles*, and it argues that "[i]t would not be productive for this Court to analyze and adjudicate the complex retroactivity questions that are now before the Supreme Court."  (Doc. 44, p. 11)

Lindley asserts that a stay is unnecessary because the Supreme Court's decision in *Beckles* will not affect this Court's calculation of the proper Guidelines sentencing range at re-sentencing. He cites *United States v. Tidwell*, 827 F.3d 761, 764 n. 3 (8th Cir. 2016) for the proposition that while a court is constrained to apply the Guidelines that were in effect on the date of a previous sentencing when a case is remanded by an appellate court, *see* 18 U.S.C. § 3742(g)(1), no such constraint applies when a sentence is vacated upon the granting of a § 2255 motion.  In *Tidwell*, a case in which the District Court for the Eastern District of Arkansas vacated the petitioner's sentence and ordered re-sentencing under § 2255, the Eighth Circuit noted that "[i]n conducting the *de novo* re-sentencing, the district court applied the guidelines in effect at the time of re-sentencing, not at the time of the original sentencing[,]" and "[t]his was clearly correct."  827 F.3d at 764.

Since *Johnson* was decided, the United States Sentencing Commission has amended the Guidelines to remove the residual clause from the definition of "crime of violence" in § 4B1.2(a)(2). *See* U.S.S.G., Amendment 798, effective August 1, 2016.  The amendment also removed burglary from the list of enumerated offenses that are considered crimes of violence, and it included other offenses, including robbery, in the list of enumerated offenses.  *Id.*  As discussed above, Lindley has a prior Arkansas felony conviction for robbery.  (Doc. 17, ¶ 43)  He does not concede that this conviction would necessarily qualify as a "crime of violence" under the amended § 4B1.2(a)(2), arguing that an analysis of whether that conviction met the test of a "generic robbery" would still be necessary.  (Doc. 47, pp. 4-5)  Considering the Eighth Circuit's decision in *Eason, supra*, it is doubtful that Lindley's Arkansas robbery conviction would qualify as a "crime of violence" under the amended § 4B1.2(a)(2).

Further, Lindley argues that the Court must still account for any *ex post facto* concerns, citing *Peugh v. United States*, 133 S.Ct. 2072, 2082, 186 L.Ed.2d 84 (2013) (holding that applying amended sentencing guidelines that increase a defendant's recommended sentence can violate the *Ex Post Facto* Clause, notwithstanding the fact that sentencing courts possess discretion to deviate from the recommended sentencing range).  Thus, Lindley argues, if the amended version of the Guidelines would result in a higher Guidelines range than the version in effect at the time the offense of conviction was committed, the prior version should be used.  (Doc. 47, p. 5)  The holding in *Peugh* would direct such an analysis, but the Supreme Court in *Peugh* also observed that "[t]he newer Guidelines, meanwhile, will have the status of one of many reasons a district court might give for *deviating* from the older Guidelines, a status that is simply not equivalent for *ex post facto* purposes."  *Id.* at 2087 (emphasis in original).

-12-

Lindley has asserted a meritorious claim that he received an unconstitutional sentence under the ACCA based on the decision in *Johnson*, and the Government concedes Lindley is entitled to have his sentence vacated under § 2255 and be re-sentenced. As the authorities discussed above require, this Court should then consider the state of the law at the time of re-sentencing without undertaking any additional retroactivity analysis. Accordingly, the undersigned agrees that a stay in this case pending the Supreme Court's decision in *Beckles* is unnecessary.

Urging the Court to stay this litigation, the Government cites two cases[2] in which other courts have held § 2255 proceedings in abeyance pending the outcome of *Beckles*. (*Id*.) The Government also cites *Fife v. United States*, No. 1:03-CR-149, 2016 WL 3745762, at *2 (S.D. Ohio July 13, 2016), in which the Court declined to grant a stay. Notably, the court in *Fife* stated:

> "Although it is tempting to adopt the government's suggestion to hold Petitioner's motion in abeyance until the Supreme Court's decision in <u>Beckles</u>, the Court notes that Petitioner has been in federal detention for almost exactly 13 years whereas his sentencing range without the career offender designation tops out at just over 10 years of imprisonment. The Court does have discretion to impose a sentence greater than the advisory range indicates. Since, however, the Court originally imposed a within-Guidelines sentence, absent some extraordinary intervening change in Petitioner's 18 U.S.C. § 3553(a) factors, he would quite likely receive a within-Guidelines sentence again. Petitioner, therefore, has quite likely served a greater sentence than the Court would impose at re-sentencing. Consequently, it would be unjust to hold Petitioner's motion in abeyance pending the Supreme Court's decision in <u>Beckles</u>."

2016 WL 3745762, at *2.

Here, absent the ACCA enhancement, and without the enhanced base offense level under

---

[2] *Blow v. United States*, 829 F.3d 170 (2d Cir. 2016) (per curiam) and *Owens v. United States*, No. 1:16-CV-00180-MR, No. 1:14-CR-00018-MR-MLH-1, 2016 WL 4582064, at *1-*2 (W.D.N.C., Sept. 2, 2016).

U.S.S.G. § 2K2.1(a)(2), Lindley argues his applicable base offense level would be 14 pursuant to § 2K2.1(a)(6), and with a two-level reduction for acceptance of responsibility his total offense level would be 12.  (Doc. 43, p. 14)  His criminal history score of 24 places him in criminal history category VI, and with a total offense level of 12, Lindley submits that his advisory Guidelines range for imprisonment would be 30-37 months.  (*Id.*)  Even if the Court were to determine at re-sentencing that Lindley had at least two felony convictions of either a crime of violence or a controlled substance offense, resulting in a base offense level of 24 pursuant to § 2K2.1(a)(2), after a three-level reduction for acceptance of responsibility his total offense level would be 21, and being in criminal history category VI the advisory Guidelines range for imprisonment would be 77 to 96 months.  If the Court were to determine at re-sentencing that Lindley had at least one felony conviction of either a crime of violence or a controlled substance offense, resulting in a base offense level of 20 pursuant to § 2K2.1(a)(4), after a three-level reduction for acceptance of responsibility his total offense level would be 17, and being in criminal history category VI the advisory Guidelines range for imprisonment would be 51 to 63 months.

Lindley has been in federal custody since his arrest on April 25, 2011, so he has now served just over 69 months imprisonment.  Applying the *Fife* analysis to the instant case leads the undersigned to the conclusion that Lindley has perhaps already served a greater sentence than the Court might impose at re-sentencing.  Consequently, it would be unjust to hold Lindley's § 2255 motion in abeyance pending the Supreme Court's decision in *Beckles*.

### III.  Conclusion

For the reasons discussed above, the undersigned recommends that Lindley's Motion Pursuant to 28 U.S.C. § 2255 (Doc. 28) be **GRANTED**; that Lindley's sentence be vacated; and, that

Lindley be scheduled for re-sentencing without the ACCA enhancement based on his pre-1993 Arkansas burglary convictions.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of January, 2017.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE